UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHYLLIS HORNE. | Civil Action No. |
| *Plaintiff,* | |
| -- against -- | **COMPLAINT** |
| VICKI BEEN, as Commissioner for the New York City Department of Housing Preservation and Development, and NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT. | |
| *Defendants* | |

Plaintiff Phyllis Horne, by her attorneys at Legal Services NYC Bronx, for her Complaint against Defendants, Vicki Been and New York City Department of Housing Preservation and Development, alleges as follows:

### PRELIMINARY STATEMENT

1.     Plaintiff brings this action pursuant to the Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. §1983; the Fair Housing Act, as amended ("FHA"), 42. U.S.C. §§ 3604(a) and (b); the Violence Against Women Act, 42. U.S.C. § 14043e-11(b)(3)(A); and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code, §§ 8-107(a)(1).

2.     Plaintiff is a fifty-five year-old survivor of domestic violence who has been a recipient of a Section 8 subsidy administered by Defendants since March 1995. Following a domestic violence incident in August 2014, Plaintiff's abuser stalked her, and destroyed her mail. Around that same time, Defendants allegedly sent Plaintiff a pre-termination notice for failing to

provide an "absent parent affidavit" and then a termination notice. However, Plaintiff never received either of the notices because her abuser had been destroying her mail. Plaintiff's subsidy was then terminated. After learning her subsidy was terminated during a housing court proceeding, Plaintiff notified Defendant that she was a survivor of domestic violence and that the termination had occurred because of the actions of her abuser. HPD, however, denied her request to contest the subsidy termination.

3.      By failing to provide an opportunity to be heard, Defendants have deprived Plaintiff of her due process rights, and by terminating the subsidy of a victim of domestic violence because of the conduct and/or actions of her abuser, Defendants have violated a federal statute designed to protect survivors of domestic violence and discriminated against Plaintiff on the basis of her gender.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 1331.

5.      This Court has supplemental jurisdiction over the local claims pursuant to 28 U.S.C. § 1367.

6.      Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 et seq.

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b). The Southern District of New York is the judicial district where the apartment in question is located, where Defendants have a principal place of business, and where the facts giving right to the instant claims occurred.

## PARTIES

8.      Plaintiff is a fifty-five year-old survivor of domestic violence. She currently resides at 970 Prospect Avenue, Apt 2B, Bronx, NY 10459 with her daughter and her two minor grandchildren. Plaintiff has resided in this apartment for approximately twenty-four years and received a rental subsidy through the Section 8 Existing Housing Program from March 1995 until November 2014.  Her rental subsidy was administered by Defendants.

9.      Defendant VICKI BEEN is the Commissioner of the New York City Department of Housing Preservation and Development and in that capacity is responsible for HPD's compliance with the rules and regulations governing the Section 8 Housing Choice Voucher Program through which Plaintiff received her Section 8 housing subsidy.

10.      Defendant NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT is an administrative department in the City of New York with its principal place of business at 100 Gold Street, New York, New York 10038.

## STATUTORY AND REGULATORY SCHEME

### The United States Housing Act

11.      Congress enacted the United States Housing Act of 1937 ("the Act") "to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income." 42 U.S.C. § 1437.

12.      Section 8 of the Act provides: "For the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing, assistance payments may be made with respect to existing, newly constructed and substantially rehabilitated housing in accordance with the provisions of this section." 42 U.S.C. § 1437f(a).

13.     Section 8 authorizes the Secretary of Housing and Urban Development ("HUD") "to enter into annual contributions contracts with public housing agencies pursuant to which such agencies may enter into contracts to make assistance payments to owners of existing dwelling units in accordance with this Section." 42 U.S.C. § 1437f(b)(1).

14.     Pursuant to this authority, the Secretary of HUD has entered into an Annual Contributions Contract with HPD to administer a Section 8 program for existing housing in New York City. See 24 C.F.R. § 982.151.

15.     In addition to federal regulations, the administration of the Section 8 housing choice voucher program is also governed by the HPD Administrative Plan ("Administrative Plan") and the Housing Urban Development Housing Choice Voucher Program Guidebook ("HUD Handbook").

16.     Families are eligible for Section 8 assistance only if they are indigent.  All assisted families must be either "low-income families" or "very low-income families." 42 U.S.C. § 1437n.  A "low-income" family has income at or below 80 percent of the median income for the area as determined by HUD; a "very low-income" family has income at or below 50 percent of the median income for the area as determined by HUD.  42 U.S.C. § 1437a(b).  See also 24 C.F.R. § 982.201.

17.     In administering the Section 8 program, HPD is required to examine family income and composition at the time of admission, and at least annually during the family's participation in the Section 8 program.  42 U.S.C. § 1437f(c)(3); 24 C.F.R. § 982.153(b)(15); 24 C.F.R. § 982.516; and, 24 C.F.R. § 5, subpart F.  The annual process of verifying continued eligibility is called "recertification."

4

18.     HUD regulations state that participant families "must supply any information requested by the [Housing Assistant] or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition in accordance with HUD requirements." 24 C.F.R. § 982.551(b)(2). Such information generally includes proof of income from employers or government agencies, proof of family composition, and an affidavit of income signed by the participant.

19.     HPD is permitted to terminate program assistance for a participant in the Section 8 program "[i]f the family violates any family obligations under the program (see § 982.551)." 24 C.F.R. § 982.552(b)(1). However, "[i]n deciding whether to deny or terminate assistance because of action or failure to act by members of the family, the HA has discretion to consider all of the circumstances in each case, including the seriousness of the case, the extent of participation or culpability of individual family members, and the effects of denial or termination of assistance on other family members who were not involved in the action or failure."   24 C.F.R. § 982.552(c)(1).

20.     Defendants are also subject to the provisions of the Fair Housing Act, the Violence Against Women Act, as well as local anti-discrimination laws which prohibit discrimination against participants in the Housing Choice Voucher program.

### Fair Housing Act

21.     The Fair Housing Act, 42 U.S.C. §§ 3601 et. seq., states that "it shall be unlawful . . . [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. §3604 (a).

5

22.     The law further states that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604 (b).

## Violence Against Women Act

23.     The Violence Against Women Act ("VAWA") provides protections for victims of domestic violence who live in public and Section 8 housing and prescribes that an individual "may not be . . . terminated from participation in, or evicted from the housing on the basis that the applicant or tenant is or has been a victim of domestic violence, dating violence, sexual assault, or stalking . . ." 42. U.S.C. § 14043e-11(b)(1). Further, "[a]n incident of actual or threatened domestic violence, dating violence, sexual assault, or stalking shall not be construed as . . . good cause for terminating assistance, tenancy, or occupancy rights." 42. U.S.C. § 14043e-11(b)(2). See also HUD Programs: Violence Against Women Act Conforming Amendments, Final Rule, 75 Fed. Reg. 66246.

24.     VAWA further mandates that no person shall be denied housing assistance "solely on the basis of criminal activity directly relating to domestic violence, dating violence, sexual assault, or stalking that is engaged in by a member of the household of the tenant or any guest or other person under the control of the tenant, if the tenant or an affiliated individual of the tenant is the victim or threatened victim of such domestic violence, dating violence, sexual assault, or stalking." 42 U.S.C. § 1403e-11(b)(3)(A).

## New York City Human Rights Law

25.     The New York City Human Rights Law makes it "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or

employee of any place or provider of a public accommodation because of the actual or perceived

. . . gender . . . of any person directly or indirectly, to refuse, withhold from or deny to such

person any of the accommodations, advantages, facilities or privileges thereof . . ." N.Y.C.

Administrative Code § 8-107(4).

## STATEMENT OF FACTS

26.     Plaintiff is fifty-five years old and has resided at 970 Prospect Avenue, Apt 2B,

Bronx, NY 10459 for approximately twenty-four years. She currently resides at this apartment

with her daughter, and two minor grandchildren, ages seven and two.

27.     Plaintiff receives $709 per month in Social Security Income ("SSI"), a federal

program for the mentally and physically disabled.

28.     Plaintiff has been a recipient of a Section 8 voucher administered by HPD since

March 1995.

29.     Plaintiff is also a survivor of domestic violence. On August 29, 2014, Plaintiff

was the victim of a domestic violence incident. On that day, her ex-boyfriend physically

assaulted her. He attacked her, punched her in the face, knocking several teeth out, and abused

her to the point that she now has to use a cane to walk. During the incident, Plaintiff's abuser

threatened to destroy everything Plaintiff owned. After this incident, Plaintiff was granted an

order of protection against her attacker.

30.     For a few months after this incident Plaintiff chose to stay nights with family out

of fear for her safety, but returned to her apartment during the day to check her mail and her

belongings. For months after the incident, she had problems receiving her mail because her

batterer was going through her mail and destroying it. Plaintiff knew that her abuser was going

through her mail because she never had issues with her mail prior to the incident, other tenants

told her that they saw her abuser coming into the building, and a neighbor once found a ripped up letter addressed to Plaintiff in front of her mailbox.

31.     According to HPD records obtained pursuant to the Freedom of Information Law ("FOIL"), Plaintiff's last Section 8 recertification package was complete as of May 14, 2014. However, according to a notation dated June 30, 2014 in HPD's records, HPD allegedly sent a letter requesting an "absent parent form for Tyson."

32.     Upon information and belief, an "absent parent form" is a form that lays out any child support received from an "absent parent" when a household has a member under the age of 18, who lives in the unit without one or both of his or her biological parents. Tyson Parson is Plaintiff's grandson, who lives in her apartment with her and her daughter, and who has been listed in her certification packets since he was born in 2007.

33.     According to a notation in HPD records dated September 8, 2014, Plaintiff "returned the absent parent affidavit with a note explaining that she didn't understand how to fill the form." An HPD representative then allegedly tried to reach Plaintiff by phone but was unable to reach her, and instead sent a letter for a conference to be held on September 19, 2014.

34.     On or around September 29, 2014, HPD allegedly sent a pre-termination notice to Ms. Horne for failing to return the absent parent affidavit form, and later allegedly sent a termination notice in or around October 2014.

35.     Plaintiff never received the conference notice or the termination notices because her abuser was destroying her mail, and therefore she believed her recertification package had been completed.

36.     Plaintiff was not aware that her Section 8 had been terminated until in or around March 2015, when she was informed in a nonpayment proceeding in housing court.

8

37.     Immediately after learning that her subsidy had been terminated, on March 20, 2015, Plaintiff faxed HPD a written request for a hearing. She included evidence of her assault with her request.

38.     HPD's records show that it was aware of the August 2014 domestic violence incident: it had copies of the police report, and notations showing that Plaintiff had explained to someone at HPD that her abuser had been destroying her mail around the time of the subsidy termination. However, HPD still denied her request for a hearing to contest the termination as they alleged it was untimely.

39.     Plaintiff retained Legal Services NYC-Bronx ("LSNYC") to represent her in the nonpayment proceeding in housing court. LSNYC requested Plaintiff's Section 8 file pursuant to the Freedom of Information Law ("FOIL").

40.     After reviewing the Section 8 file, Plaintiff's attorney contacted HPD on September 15, 2015 to request they reinstate Plaintiff's subsidy or, at the very minimum, grant her a conference to contest the termination. Plaintiff's attorney included records from HPD that showed that HPD had received a police report of the domestic violence incident and that Ms. Horne had already explained that her abuser had been destroying her mail and that therefore she had not received any notices. Plaintiff's attorney explained that but for Plaintiff's abuser's destruction of her mail, Plaintiff would have complied with HPD's documentation requirements.

41.     After nearly five months, and multiple follow up emails, HPD once again denied Plaintiff's request for hearing, giving no apparent consideration to her status as a victim of domestic violence or the role her abuser played in causing her to not respond to HPD's letters and notices.

42.     Statistics show that women are overwhelmingly the victims of domestic violence. 86.6% of violent victimizations committed by intimate partners between 1993 and 1998 were committed against women. Callie Marie Rennison & Sarah Welchans, U.S. Dept. of Justice, Intimate Partner Violence (2000) at 8. An estimated 1.3 million women are the victims of assault by an intimate partner each year, and about 1 in 4 women will experience intimate partner violence in their lifetimes. Centers for Disease Control and Prevention, National Center for Injury Prevention and Control, Costs of Intimate Partner Violence Against Women in the United States (2003).

43.     Recent statistics confirm that although the prevalence of domestic violence against men has increased, women experience extremely high and disproportionate rates of domestic violence and sexual violence. See U.S. Dept of Health & Human Services, National Intimate Partner and Sexual Violence Survey 2010 Summary Report, at 18, 38-39, 54-55 (2011) (reporting that more than one in three women have experiences rape, physical violence, and/or stalking by an intimate partner in their lifetime, that nearly five times more women compared to men need medical care from domestic violence, and that thirteen times more women have been raped.) Intimate partner violence, rape, and stalking are even more prevalent among African American women, American Indian women, and multi-racial women. Id.

44.     Discrimination against victims of domestic violence is therefore discrimination against women. Sara K. Pratt, U.S. Dep't of Hous. & Urban Dev., Office of Fair Hous. & Equal Opportunity, Assessing Claims of Housing Discrimination Against Victims of Domestic Violence under the Fair Housing Act and the Violence Against Women Act (2011) (setting out legal theories by which a domestic violence victim may bring a sex discrimination claim under the FHA).

49.     Many domestic violence and stalking victims lose their housing based on the acts of their abusers. See 42 U.S.C. §§ 14043e(3) and (4); Public Advocate of New York City, Safety Shortage: The Unmet Shelter and Housing Needs of New York City's Domestic Violence Survivors, at 8 (March 2005) ("survivors searching for housing face discrimination from landlords who fear that batterers will find survivors in their new homes and create problems on the premises"); New York City Council, Report of the Governmental Affairs Division on Int. No. 305 at 2 (April 28, 2004) ("Abusers or stalkers frequently follow victims to their homes, assault and harass victims in their homes and engage in other behaviors that undermine victims' security in their homes. In addition, victims face the danger of losing secure housing when property owners become aware of the problem.")

50.     The percentage of women victimized by domestic violence and stalking is likely higher among those receiving Section 8 subsidies than it is for the general population because women who live in rental housing and women with low incomes are far more likely to experience abuse than home-owning and affluent women. See Callie Marie Rennison & Sarah Welchans, U.S. Dep't of Justice, NCJ 178247, Intimate Partner Violence at 5 (2000) (finding women living in rental housing experience intimate partner violence at more than three times the rate of women who own their homes and women with annual household incomes of less than $7,500 were nearly seven times more likely than women with annual household incomes of over $7,500 to experience domestic violence.)

51.     Although Defendants were aware that the vast majority of domestic violence survivors are women, Defendants nonetheless continued to follow a policy, pattern, or practice that resulted in the termination of the subsidy of a victim of domestic violence because of the conduct and/or actions of her abuser. As a matter of policy, pattern, and practice, Defendant

terminates participants' section 8 subsidies for untimely recertification without regard to whether the untimeliness was a result of the participant's status as a victim of domestic violence.

52.     Defendants adopted such a policy, pattern, or practice despite the fact that they knew it would have a vastly disproportionate effect on women.

53.     By implementing a policy, pattern or practice that resulted in the termination of the subsidy of a victim of domestic violence for the conduct and/or actions of her abuser Defendants have discriminated against Petitioner on the basis of her gender

54.     As a result of Defendants' policy, pattern, or  practice that penalizes victims of abuse for the acts of their abusers, Plaintiff has been placed in danger of eviction and faces homelessness.

## CAUSES OF ACTION

### First Cause of Action: Violation of Due Process

55.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

56.     42 U.S.C. § 1983 creates a cause of action on behalf of "any citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges or immunities secured by the Constitution and laws" against any person acting "under color of any statute, ordinance, regulation or usage."

57.     Defendants are "persons" acting "under color" of City and State law within the meaning of 42 U.S.C. § 1983.

58.     Plaintiff has a property interest in the Section 8 subsidy in question.

59.     Plaintiff was deprived of this property interest without sufficient notice or a chance to be heard. Providing Plaintiff with a hearing when she informed Defendants that she did

not receive notice of the termination as a result of the actions of her abuser would not have constituted a substantial burden for Defendants.

60.     Defendants have thus deprived Plaintiff of a property interest without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

## Second Cause of Action: Violations of Title VIII of the Civil Rights Act (Fair Housing Act) under 42 U.S.C. § 3604(a) – Disparate Impact

61.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

62.     Plaintiff is a woman and a survivor of domestic violence.

63.     Defendant HPD is a covered housing program under the FHA.

64.     As stated above, statistics show that women are overwhelmingly the victims of domestic violence.

65.     As a matter of policy, pattern, and practice, Defendant terminates participants' section 8 subsidies for untimely recertification without regard to whether the untimeliness was a result of the participant's status as a victim of domestic violence.

66.     A policy that penalizes victims of abuse for the acts of their abusers affects disproportionate numbers of women.

67.     Defendants' discriminatory policies and actions resulted in the termination of the subsidy for Plaintiff's apartment.

68.     Defendants' actions constitute discrimination against the Plaintiff on the basis of gender in violation of the Fair Housing Act.

**Third Cause of Action: Violation of the Violence Against Women Act**

69.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

70.     Defendant HPD is a covered housing program under VAWA.

71.     42 U.S.C. § 1983 creates a cause of action on behalf of "any citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges or immunities secured by the Constitution and laws" against any person acting "under color of any statute, ordinance, regulation or usage."

72.     Defendants are "persons" acting "under color" of City and State law within the meaning of 42 U.S.C. § 1983.

73.     The Violence Against Women's Act, 42 U.S.C. § 14043e-11(b)(3)(A), mandates that no person shall be denied housing assistance "solely on the basis of criminal activity directly relating to domestic violence, dating violence, sexual assault, or stalking that is engaged in by a member of the household of the tenant or any guest or other person under the control of the tenant, if the tenant or an affiliated individual of the tenant is the victim or threatened victim of such domestic violence, dating violence, sexual assault, or stalking."

74.     But for her abuser's destruction of her mail, Plaintiff would have complied with HPD's documentation requirements and HPD would not have terminated her Section 8 housing assistance.

75.     Defendants have therefore deprived Plaintiff of her right guaranteed by the Violence Against Women Act not to have her housing assistance terminated because of an act of domestic violence.

14

**Fourth Cause of Action: Violations of New York City Human Rights Law – Disparate Impact**

76.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

77.     Plaintiff is a woman and a survivor of domestic violence.

78.     Defendant HPD is a public accommodation under the NYC Human Rights Law.

79.     As stated above, statistics show that women are overwhelmingly the victims of domestic violence.

80.     As a matter of policy, pattern, and practice, Defendant terminates participants' section 8 subsidies for untimely recertification without regard to whether the untimeliness was a result of the participant's status as a victim of domestic violence.

81.     A policy that penalizes victims of abuse for the acts of their abusers disproportionately affects women.

82.     The fact that the policy may be unwritten is irrelevant to whether it has discriminatory disparate impact.

83.     Defendants' discriminatory policies and actions resulted in the termination of the subsidy for Plaintiff's apartment.

84.     Defendants' actions constitute discrimination against the Plaintiff on the basis of gender in violation of the New York City Human Rights Law.

### RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests that this Court:

(a)     Enter a final judgment declaring that Defendants violated:

   a.   Plaintiff's right to due process under the Constitution of the United States;

     b.  Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Amendment Act of 1988, 42 U.S.C. § 3601 <u>et seq</u>., and its implementing regulations;

     c.  The Violence Against Women Act, 42. U.S.C. § 14043e-11 <u>et seq</u>., and its implementing regulations; and

     d.  The New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 <u>et seq</u>., and its implementing regulations.

(b)    Enter final, mandatory injunctive relief vacating the determination of Defendants and requiring Defendants to immediately reinstate Plaintiff's Section 8 voucher, or in the alternative to schedule a hearing at which Plaintiff will have an opportunity to be heard;

(c)    Enter a final judgment awarding Plaintiff actual, compensatory, and nominal damages for injuries and expenses incurred as a result of the preceding violations;

(d)    Allow Plaintiff reasonable attorney's fees, costs and disbursements pursuant to 42 U.S.C. §§ 1988 and 3613, and N.Y.C. Admin. Code § 8-502; and

(e)    Grant such other and further relief as this Court may deem just and proper.

Dated: July 7, 2016                  Respectfully submitted,


Legal Services NYC – Bronx
Christopher Lamb, Esq. (CL 8145)
Jackeline K. Solivan, Esq.
349 E. 149 St., 10th Floor
Bronx, New York 10451
(718) 928-3719